Mr. Fox, you may proceed. Thank you. I'd like to thank the Court for first appointing us to the privilege of representing Mr. Haley and Mr. Haley's consent to our representation. Although there were three issues presented in the opening brief of Mr. Haley, I believe that certain developments in the law should confine the Court's analysis to just a single issue, and that is whether the recent decision in the case of War Soldier should govern the application of the RLUIPA in this case. Now, what about the First Amendment free exercise issue as such, which would, of course, invoke Turner and Henderson? We can let that go, or is that still a live issue? I don't think it was initially raised in the opening brief, because at that time the Cutter opinion had not yet been decided, resolving the constitutionality of the RLUIPA. And since that has been resolved, it is probably unnecessary for the Court to address a constitutional issue. All right. So the argument will be on RLUIPA? Right. Thank you, Your Honor. As the Court knows quite well, the RLUIPA provides that the government cannot impose a substantial burden on the religious exercise of a person unless it is in furtherance of a compelling governmental interest and it is the least restrictive means. If the Court would like, we can probably just confine the analysis to whether there is a least restrictive means, although it is Mr. Haley's position that there is not even a true compelling interest that has been advanced by the government in this case. Well, what does War Soldier tell us at this point? We're in that box, are we not? Yes. Yes. War Soldier basically said that, first of all, the grooming provision that is at issue, it was the same grooming provision from the CDC, does impose a substantial burden on the religious exercise of certain people whose religion requires them not to cut their hair or, as in the case of War Soldier, not to cut their hair except in very limited circumstances. Here it's quite clear that Mr. Haley is not permitted to cut his hair at all under any circumstance. It is the only outward display of his Sikh faith that he can engage in while incarcerated and, therefore, there is a substantial burden. War Soldier also says that although in that case, sort of generally, the Court stated that there is a compelling interest in security, when the Court looked at the way that the facts in that case had developed and the facts in that case, although it arose in the context of a denial of a preliminary injunction, the record there was actually more fleshed out than in this case, which arises in the context of the granting of summary judgment to the defendants. The Court in War Soldier, in which Judge Pius was a member of the panel, raised some questions about the, I guess, the veracity of the State in saying that security was actually a compelling interest there. And the reason is because, among other things, women inmates have no similar provision that requires them to cut their hair, regardless of how violent or dangerous they may be, regardless of whether they pose an escape risk. But wasn't the real holding of War Soldier that in that case, the government had failed to show that there was no less restrictive method that could have been adopted to accomplish the same result? Isn't that what it really held? Well, I think it's somewhat ambiguous whether they held that the government had a compelling interest in keeping the hair shorn to prevent people from concealing weapons and long hair or to make it more difficult for them to change their appearance if they escaped from prison. But they came out on a quill and said the government has made no attempt to show that any less restrictive method would not be successful. Judge Freeman, I agree. I believe that the Court and War Soldier actually made a variety of holdings, but I believe that this case can be disposed of on that key issue that you have seized upon, and that is whether the government or the defendants in this case can show that there is, that they have actually considered and rejected less restrictive means. Well, you would like us to remand to the district court so that they could go through that exercise, right? Or are you making a stronger argument that somehow or other we can simply reverse outright? Well, I do think that this court could reverse outright. I would not be disappointed in a reversal and remand. How do you get there? Excuse me? How do you get there? I know you won't be disappointed, but isn't the proper procedure assuming that you've prevailed on your analysis, that we would remand so then the institution could make a showing and the court would be forced to determine whether or not it is indeed the least restrictive method? And after all, this case was argued before War Soldier came down, was it not? This case was argued before War Soldier came down. However, the state of the law, I would submit, was relatively clear. Well, that's not entirely accurate. I think it's accurate to the extent that the RLUIPA, at least in the district court, just did not have the advantage of our opinion in War Soldier. At the time, the district court granted summary judgment here. That's absolutely right. The district court did not have any. And he might have come out different if he had had War Soldier in front of him. I believe the district court would have come out differently. You might have proceeded to a trial rather than resolving it on summary judgment. Absolutely. I agree with all of those statements. Nevertheless, I would go one bit further and say that there is no reason why the district court should have reached a different conclusion than did the court in War Soldier, except for the fact that the district court made legal error. The court in War Soldier simply reached the right conclusion and the district court the wrong one in terms of how the RLUIPA is to be applied to the grooming regulation that has been challenged. You're down to a little over two minutes. Do you want to reserve your time? Yes, I would. Thank you. We'll hear from the governor. Good morning, Your Honor. I'm John Rittmeyer, Deputy Attorney General for the defendants and appellees. And I'd like to jump right in on the least restrictive alternative issue following in following suit with the opposing counsel. Did any of this come up at trial when you were in front of the district court? Was there any discussion about? I didn't handle that. I didn't handle the case at the district court level, Your Honor. Presumably you read the transcript. Yes, Your Honor. All right. And my question remains, did this issue of least restrictive alternative get considered? Absolutely. The whole issue of RLUIPA was briefed to the district court. And the court, as you will see from the district court's decision, determined that the grooming standards constituted the least restrictive alternative to in pursuit of at least two compelling needs, security and safety. If you can distinguish those two. Did the district court actually find that there was no less restrictive method of accomplishing these objectives? At a minimum, Your Honor, the district court determined that there was no less restrictive alternative that was proposed by the plaintiff in this case. He was unrepresented at that time, wasn't he? He was not represented. So I guess the answer to your question is yes. In any event, I would like to point out that the grooming standards, getting to less restrictive or the least restrictive alternative issue, the grooming standards of the California Department of Corrections do not mandate a forcible cutting of the hair. And that doesn't get a lot of mention in the briefs or in really any of the cases. No, but if they don't cut their hair, allow their hair to be cut, they're penalized. Yes, Your Honor. That is the case. They are penalized and there are additional security measures that are imposed on the inmate, what are called C-status rules. So that essentially limits the movements of the inmate within the prison. And it also. In fact, the failure to cut his hair without regard to his religious reasoning is treated the same as any other disobedience of a valid order in prisoners. I mean, it's no different than if someone said to him, said to a prisoner, you get back in your cell and the prisoner said, I won't. Here they said to him, you cut your hair. And he said, I won't. The difference is he doesn't have any reason to say he won't go back. Well, I suppose, you know, you might have the same thing. And he said, under my religion, I'm not permitted to spend any daylight hours in the cell. Well, we haven't run up against that religion yet. It may happen. In any event, Your Honor is correct. The failure or refusal to cut hair is treated the same as any other rules violation. But the hair is not forcibly cut. And I think that's the first step towards showing that there is a least restrictive alternative here. In the district court, the defendants demonstrated that there had been two escapes from CDC institutions in which the cutting of the hair played a role. And in doing so, the department or the defendant showed that there was a risk that attends long hair and an uncut beard. But this goes to the question, which you're addressing now, goes to whether there was a compelling state interest, doesn't it? Rather than whether there was some alternative. And I take it the alternative, by definition, is not cutting the hair short. There might be some other alternatives, wearing it in a ponytail or tie it up or something. All of those have been discussed, either in this case or in others, Your Honor. But those supposedly less restrictive alternatives are really not effective across the board and consistently. There are no findings on that, what you just said, though, are there? This is on summary judgment. And in summary judgment, the district court doesn't make findings of that. The district court finds that there are no genuine tribal issues. That's correct. And as a matter of law, you're entitled to prevent. There was no trial here and the district court made no findings along the lines that you just articulated. Well, I would agree with almost everything you say, Judge Pius, except that the when it is discussing the least restrictive alternatives, essentially lists a number of decisions from out of the circuit and actually the same ones that you may remember from the war soldier decision. However, each of those has its own internal discussion about a less restrictive alternative that may have been proposed by the plaintiffs in those cases. Among them are such things as ponytails that Judge Friedman mentioned. And I think each one of those has its own, each one of those allegedly less restrictive alternatives has its own problem. For example, a ponytail can be taken out in a second and then the hair droop falls around the face. During a riot, that obscure, for example, that obscures the sides of the face and makes the inmate less amenable to identification for disciplinary procedures or criminal prosecution later on. The same goes for the issue of, this is jumping ahead a bit in what I wanted to say, but the whole issue of hiding contraband in long hair. The supposedly less restrictive alternative that is impliedly or perhaps at some point expressly made by the plaintiff in the case is that essentially prison staff just work harder to deal with people with long hair. You search the hair manually more often. You have the inmate shake his hair out, run his fingers through his own hair. This whole strict scrutiny, Your Honor, I think is not a free-for-all. It is a process that the court goes through. First of all, the movement, the party moving for summary judgment, puts forward the compelling interests. Then supposedly, or so the process goes, the non-moving party then says, well, what about this less restrictive alternative? What about that? And the plaintiff did that in this case, and all of his proposals, I would submit, don't really meet the need. This shaking the hair. We didn't have the war soldier case at that time, but if it had been there, what can you show us that Judge Sabra did in the analysis on the motion for summary judgment that would have conformed to the principles of war soldier? First of all, I'd suggest to you that war soldier holds only that Mr. War Soldier made a showing that he might succeed in that case. And that is why he prevailed in. Well, didn't it also hold that the government had failed to make a showing of the availability of less restrictive alternatives? Well, there were several parts to that, Judge Friedman. But didn't the court in War Soldier hold that, that one of the reasons why War Soldier prevailed was because the government had not established and shown a less restrictive alternative? And the question that seems to me in this case is, in the light of that, has the government in this case shown a less restrictive alternative? And my impression of it, at least, is superficially that it's made the same showing that it made in the War Soldier case, which the court in War Soldier said was inadequate. Your Honor, in War Soldier, War Soldier had the burden to show that he was more likely to succeed than was the government. And there were a number of arguments raised in that case that have not been raised in a number of arguments in War Soldier that were not raised in this case. You don't rely, do you, on the fact that War Soldier came up on a preliminary injunction where all that had to be shown was a likelihood of prevailing? Whereas this case comes up on a final determination? In part. That's one distinction between the two cases. This case went all the way through the summary judgment process. Mr. Haley had the opportunity to put forward that evidence and those supposedly less restrictive alternatives that would have created genuine issues of material fact. He put certain ones forward and he failed to put other ones forward. And in that sense, Judge Sabra's decision is correct as far as the record that was in front of him. There were not genuine issues of material fact on the question of less restrictive alternatives. Thank you, counsel. Your time has expired. Thank you, Your Honor. Well, what about that? Counsel is saying that your client failed to make a sufficient showing or not as good a showing as War Soldier. Okay. First of all, I don't think that that's accurate and I also don't think that that's fair. We are dealing with a situation where the plaintiff, Mr. Haley, was representing himself below. Although there was a scheduling order which the court entered in which Mr. Haley indicated that he was going to be seeking certain discovery, he was never given the opportunity to take that discovery before the defendants brought their motion for summary judgment with their declarations and own evidence. And in fact, I would urge the court to look back at the case of May, which is cited in our briefs, is from 1997, well before the War Soldier case, where the court pointed out that if a prisoner challenges the justifications of the prison officials, that the officials must set forth detailed evidence tailored to the situation before the court that identifies the failings. That was the state of the law before War Soldier. Granted, that was with regard to the Religious Freedom Act that was subsequently found unconstitutional by the Supreme Court, but that is why the RELUPA was adopted to correct the failings of that prior act. And it was quite clear that this is the standard that, had the district court properly applied the law, would have reached the same conclusion that the War Soldier court reached, and that is looking at these purely legal issues, and that's the way the War Soldier court is looking at legal issues, there simply is no way that the defendants can prevail by showing, or in their contention, that this was the least restrictive means. If you persuade us on the RELUPA War Soldier issue, do we, can we still affirm based on the qualified immunity? No, absolutely not. There are a few reasons for that. First of all, the defendants don't even want you to address that issue, as they've stated in their brief. Secondly, we anticipated that they might advance that as an alternative basis for affirmance, and that's why we addressed it in our opening brief. But in their opposition, they said the court does not need to address it, in fact, should not address at this point. But in addition to that, even if the defendants were to prevail below, at the district court level, on the qualified immunity question, Mr. Haley would still be entitled to an injunction, which would not change that. And in fact, for the reasons set forth in our brief. Thank you, counsel. Our questions have taken you over your time. The case just argued will be submitted for decision, and we will.
judges: Friedman, O'scannlain, Paez